IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re THOMAS OLICK, | : | |
| Debtor. | : | |
| | : | |
| THOMAS OLICK, | : | |
| Plaintiff-Appellant, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 10-7492 |
| | : | |
| NORTHAMPTON COUNTY *et al.*, | : | |
| Defendants-Appellees. | : | |
| | : | |

**MEMORANDUM**

YOHN, J.                                                                October 26, 2011

This bankruptcy appeal arises from an adversary proceeding brought by Thomas Olick against Northampton County, the Easton Area School District, Palmer Township,[1] and the City of Easton. Olick appeals from the judgment of the bankruptcy court denying his motion for summary judgment and granting summary judgment in favor of Northampton County and the Easton Area School District. Olick also contends that the bankruptcy court erred in concluding that the City of Easton, which was not served with process, is not a defendant in this adversary proceeding. For the reasons that follow, I will affirm the judgment of the bankruptcy court.

---

[1] On June 8, 2010, the bankruptcy court approved a stipulation of settlement between Olick and Palmer Township, and this adversary proceeding against Palmer Township was discontinued with prejudice.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[2]

Olick filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania on February 9, 2007.

On August 6, 2007, Northampton County filed two proofs of claim in the bankruptcy proceedings. The first, claim no. 7, was for $1,881.79 in unpaid taxes for the years 2006 and 2007 on property owned and resided in by Olick and his wife at 4014 Crestview Avenue. The second, claim no. 8, was for $5,952.84 in unpaid taxes for the years 1995, 1996, 2004, 2006, and 2007 on property owned by Olick and his sons at 1220-22 Chidsey Street. Olick filed objections to the two claims on August 9, 2007. On October 10, 2007, after a hearing on Olick's objections, the bankruptcy court allowed claim no. 7 as a secured claim in the amount of $1,553.82 and disallowed claim no. 8 in its entirety.[3]

By order dated January 22, 2008, the bankruptcy court confirmed Olick's fifth amended bankruptcy plan, which provided for payment over time of the allowed claims, including the allowed portion of Northampton County's claim no. 7, by the bankruptcy trustee. On February 18, 2008, in accordance with the confirmed plan, Northampton County received a payment of $269.26 from the trustee. As a result, the remaining amount due on claim no. 7 was $1,284.56.

---

[2] Except as otherwise noted, the following facts are undisputed and are drawn largely from the bankruptcy court's recitation of undisputed facts, *see Olick v. Northampton County*, Adv. No. 09-0312 (Bankr. E.D. Pa. Nov. 9, 2010), as well as the settlement agreement entered into by the parties in connection with an earlier adversary proceeding initiated by Olick against defendants (*see* Appellant's Ex. G, Stipulation of Settlement of Adversary Proceeding (Apr. 21, 2009) ("Stipulation of Settlement")).

[3] While the bankruptcy court stated that claim no. 7 was for taxes on 4014 Crestview Avenue, Olick contends that the allowed portion of claim no. 7 actually included unpaid taxes for 2006 on three properties: 4014 Crestview Avenue ($941.89), 1209-15 Chidsey Street ($161.38), and 1220-22 Chidsey Street ($450.55). (*See, e.g.*, Appellant's Ex. L at 2.)

On September 22, 2008, Olick filed an adversary complaint against the Northampton County Tax Claim Bureau, the City of Easton, the Easton Area School District, and Northampton County alleging that they were wrongfully seeking to collect pre-petition claims for taxes outside the bankruptcy proceedings in violation of the bankruptcy court's orders (adversary case no. 08-0264). Olick asserted claims against the defendants for filing fraudulent proofs of claim, conversion, violation of the automatic stay, and harassment. The matter was resolved by a "Stipulation of Settlement of Adversary Proceeding" dated April 21, 2009, and approved by the bankruptcy court by orders dated June 16, 2009, and July 2, 2009. The settlement agreement provides, in relevant part:

    a.  Northampton County, the Northampton County Tax Claim Bureau, the City of Easton and the Easton Area School District will not take any action of any nature to collect claims for taxes that were due as of the date of filing of the Chapter 13 Bankruptcy Petition and acknowledge that to the extent that those claims are allowed, they will be fully satisfied upon receipt of the amounts allowed by the Bankruptcy Court from the Trustee in Bankruptcy.

    b.  Should the [*sic*] Northampton County, the Northampton County Tax Claim Bureau, the City of Easton or the Easton Area School District take any steps to collect the prepetition claim for taxes, through inadvertence or otherwise, this Stipulation of Settlement shall be deemed a full defense to any such claim or actions and may be presented to specified public agency or authority as proof that all prepetition claims for taxes that are allowed will be satisfied through the bankruptcy process and no other.

(Stipulation of Settlement ¶ 19.)

On September 10, 2009, BAC Tax Services Corporation ("BAC"), an agent for Bank of America, the mortgagee with respect to Olick's property at 4014 Crestview Avenue, requested from Northampton County information regarding outstanding real-estate taxes on the property. In response to this inquiry, Northampton County prepared a certification stating that the total tax

balance then due on the property was $12,978.81. This amount reflected post-petition taxes owed as well as pre-petition taxes. Soon thereafter, Northampton County received checks from Bank of America totaling $12,978.81.[4]

On October 7, 2009, after learning that Bank of America had paid the outstanding taxes, Olick filed an adversary complaint and initiated this adversary proceeding against Northampton County, Palmer Township, and the Easton Area School District alleging fraud, conversion, violation of the automatic stay, harassment, breach of contract, and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968.

On December 10, 2009, he filed a motion seeking leave to amend his adversary complaint. Among other things, he sought to add the City of Easton as a defendant. While his motion to amend was pending, Olick served the amended complaint on the City of Easton and the other defendants. On January 8, 2010, the City of Easton filed a motion to strike the amended adversary complaint.[5]

On January 13, 2010, the bankruptcy court granted Olick's motion to amend his adversary complaint and to add the City of Easton as a defendant. The bankruptcy court ordered the City of Easton to file a notice advising Olick and the court whether it consented to the court's exercise of personal jurisdiction over it without the necessity of service of the amended complaint and

---

[4] The checks were from Countrywide Home Loans, which was acquired by Bank of America, and BAC. (*See* Appellant's Ex. J (letter from Shirley O'Brien to T W Olick (Sept. 29, 2009).) Two checks were received on September 14, 2009; a third check was received on September 24, 2009. (*Id.*)

[5] The Easton Area School District, Northampton County, and Palmer Township, however, filed answers to the amended complaint, notwithstanding that the bankruptcy court had not yet ruled on Olick's motion to amend.

summons. The bankruptcy court further ordered that if the City of Easton did not consent to the

court's exercise of personal jurisdiction over it, Olick was to promptly serve the City of Easton.

On March 1, 2010, the City of Easton filed a notice stating that it did not consent to the

bankruptcy court's exercise of personal jurisdiction over it without service of process. Olick filed

an objection to the City of Easton's notice but did not serve the amended complaint and

summons upon the City of Easton. Because the City of Easton was not served with process after

Olick was granted leave to file his amended complaint, the bankruptcy court concluded that the

City of Easton was not a defendant in this adversary proceeding.

On March 29, 2010, during the pendency of this adversary proceeding, Olick filed a

motion in his bankruptcy proceeding to have claim no. 7 declared paid in full and to discontinue

further distributions by the trustee on that claim. By order dated April 28, 2010, the bankruptcy

court granted the motion.[6]

On June 8, 2010, the bankruptcy court approved a stipulation of settlement between Olick

and Palmer Township, and this adversary proceeding against Palmer Township was discontinued

with prejudice.

On June 23, 2010, Olick filed a motion for summary judgment as to all claims against the

remaining two defendants, Northampton County and the Easton Area School District. The Easton

Area School District filed a cross-motion for summary judgment as to all claims against it on

August 3, 2010, and Northampton County filed a cross-motion for summary judgment as to all

---

[6] After Bank of America paid the outstanding tax balance, Northampton County received only one distribution from the bankruptcy trustee—a payment in the amount of $18.07 on March 8, 2010. Northampton County returned the payment to the trustee on April 12, 2010. (*See* Appellant's Ex. R (notice that tax payment was being returned and copy of check from trustee).)

claims against it on August 19, 2010. In a memorandum and order dated November 9, 2010, the bankruptcy court denied Olick's motion for summary judgment and granted summary judgment in favor of Northampton County and the Easton Area School District as to all counts.

This appeal followed.

## II.      STANDARD OF REVIEW

The district courts have jurisdiction to hear appeals from final judgments and orders of the bankruptcy courts. Under the Federal Rules of Bankruptcy Procedure, a district court, sitting as an appellate tribunal, "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. In so doing, the district court applies a clearly erroneous standard to review a bankruptcy court's factual findings and a *de novo* standard to review its conclusions of law. *See In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994).

The Federal Rules of Bankruptcy Procedure import into adversary proceedings the standard for summary judgment set forth in Federal Rule of Civil Procedure 56, *see* Fed. R. Bankr. P. 7056, pursuant to which a motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). To defeat a motion for summary judgment, the nonmoving party must show more than "[t]he mere existence of a

6

scintilla of evidence" for elements on which it bears the burden of production, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), and may not "rely merely upon bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). When evaluating a motion for summary judgment, the court "is not to weigh the evidence or make credibility determinations." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

As a preliminary matter, Olick contends that the bankruptcy court improperly concluded that the City of Easton is not a defendant in this adversary proceeding. Because Olick did not serve his amended complaint upon the City of Easton after the bankruptcy court granted him leave to file an amended complaint, I agree with the bankruptcy court that the City of Easton is not a defendant in this action. The relevant facts are undisputed, and the bankruptcy court did not make any errors of law. As a general rule, where an amendment requires leave of the court, an amended complaint has no legal effect until the court grants such leave, *see* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1484, at 685 (3d ed. 2010), and thus, contrary to Olick's contentions, it is of no consequence that Olick served the City of Easton while his motion to amend his complaint was still pending.

As to the claims against Northampton County and the Easton Area School District, in his amended adversary complaint Olick asserts seven claims against these two defendants: fraud

(count I); filing of fraudulent proofs of claim (count VII); conversion (count II); violation of the automatic stay (count III); breach of contract (count V); harassment (count IV); and violation of RICO (count VI). The bankruptcy court granted summary judgment in favor of Northampton County and the Easton Area School District on all seven counts, and Olick now challenges the bankruptcy court's judgment as to each claim. I conclude that the bankruptcy court properly granted summary judgment in favor of these two defendants, and I will thus affirm the judgment of the bankruptcy court, although with respect to some claims I will do so on different grounds, *see Fairview Township v. EPA*, 773 F.2d 517, 525 n.15 (3d Cir. 1985) ("It is well settled that we [can] affirm the district court on any basis which finds support in the record." (internal quotation marks omitted) (alteration in original)).

I note that Olick bases his claims against the Easton Area School District on an agency theory of liability, asserting that Northampton County acted as an agent of the Easton Area School District for the collection of taxes owed to the school district.[7] Because the claims against the Easton Area School District are derivative of those against Northampton County, I turn first to the claims against Northampton County.

_____

[7] In the settlement agreement in Olick's first adversary proceeding against defendants, the parties stipulated that "[t]he Northampton County Tax Claim Bureau acts as the agent for the taxing authorities in the county for the collection of taxes referred to it and identified as delinquent by various county taxing authorities, including but not limited to Northampton County, the City of Easton, Palmer Township and the Easton Area School District." (Stipulation of Settlement ¶ 4.)

A.       **Northampton County**

1.       **Fraud (Count I) and the Filing of Fraudulent Proofs
of Claim (Count VII)**

Olick asserts, in count I of his amended adversary complaint, that Northampton County

committed fraud.

To establish fraud, or intentional misrepresentation, under Pennsylvania law, a plaintiff

must prove six elements: "(1) a representation; (2) which is material to the transaction at hand;

(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4) with the intent of misleading another into relying on it; (5) justifiable reliance on the

misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Overall

v. Univ. of Pa.*, 412 F.3d 492, 498 (3d Cir. 2005) (quoting *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa.

1994)).

Olick alleges that Northampton County engaged in fraud by filing claims in his

bankruptcy proceeding for taxes that he had already paid—these allegations also form the basis

for his claim in count VII that Northampton County filed fraudulent proofs of claim. He argues

that the fact that the bankruptcy court determined that some of the taxes in claims no. 7 and no. 8

had already been paid, and therefore disallowed claim no. 8 and a portion of claim no. 7, is

conclusive proof that Northampton County filed fraudulent claims.[8] But beyond his conclusory

allegation that Northampton County knew, or should have known, that these taxes had already

---

[8] Although Olick asserts that the bankruptcy court disallowed the claims because they had
already been paid, the bankruptcy court's order did not include its reasons for disallowing claim
no. 8 and disallowing a portion of claim no. 7. It is possible that the bankruptcy court explained
its reasons in the hearing held on those claims, but the transcript from that hearing was not
provided in the record on appeal.

been paid, Olick has offered no evidence from which a fact-finder could reasonably find that Northampton County intentionally misrepresented the amount of taxes owed when it filed these two claims. Accordingly, these claims of fraud and the filing of fraudulent claims must fail.[9]

The bankruptcy court construed Olick's fraud claim as asserting only this theory of liability and granted summary judgment in favor of Northampton County. But, although some (perhaps most) of Olick's allegations are difficult to discern, his amended complaint (and his briefs to the bankruptcy court addressing the motions for summary judgment) may fairly be read as asserting two other bases for his fraud claim.

Olick also asserts that Northampton County engaged in fraud when, in responding to BAC's inquiry regarding outstanding taxes on Olick's property, Northampton County reported as unpaid certain taxes that the bankruptcy court had disallowed. Northampton County concedes that the tax balance reported to BAC included "pre-petition obligations that were not part of the approved claims." (Br. of Appellee Northampton County ("Northampton County's Br.") at 4 n.3.) But, even assuming that the inclusion of disallowed amounts in the tax certification

---

[9] Several courts have held that there is no private cause of action against a creditor who files a fraudulent proof of claim. *See, e.g.*, *Holloway v. Household Auto. Fin. Corp.*, 227 B.R. 501, 504–06 (N.D. Ill. 1998); *Smith v. Oak Grove Util. Co.* (*In re Smith*), Adv. No. 08-0137, 2009 WL 115293, at *4 (Bankr. D. Md. Jan. 16, 2009); *Patrick v. Dell Fin. Servs., L.P.* (*In re Patrick*), 344 B.R. 56, 58–59 (Bankr. M.D. Pa. 2005). Although the Third Circuit has not expressly addressed this issue, it has held that section 105(a) of the Bankruptcy Code (which provides that a court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a)) does not afford debtors a private cause of action to remedy alleged violations of section 506(b) (which allows oversecured creditors to add reasonable attorney fees, interest, and costs to the amount of their secured claim, *see* 11 U.S.C. § 506(b)). *See Joubert v. ABN AMRO Mortg. Grp., Inc.* (*In re Joubert*), 411 F.3d 452, 454–56 (3d Cir. 2005). In any event, I need not determine whether a cause of action exists here, because Olick has presented no evidence that Northampton County filed a fraudulent proof of claim.

constituted an intentional misrepresentation, Olick has presented no evidence to support a finding of justifiable reliance—there is no evidence that he took any action (or refrained from any action) in reliance on this misrepresentation. Accordingly, this claim against Northampton County must fail.

Finally, Olick asserts that Northampton County engaged in fraud by failing to inform the bankruptcy trustee that Bank of America had paid the outstanding tax balance and by continuing to seek payments from the bankruptcy trustee, in accordance with Olick's confirmed plan, even after Bank of America had paid the amount due. But here again, even assuming that there was a misrepresentation, Olick has failed to submit any evidence that he relied on the misrepresentation or that he suffered any injury as a result of such reliance. Although the bankruptcy trustee did make a payment of $18.07 after Bank of America paid the outstanding tax balance, that payment was returned to the trustee. And, upon Olick's motion, the bankruptcy court declared claim no. 7 paid and ordered the trustee to discontinue distributions on that claim.

Summary judgment in favor of Northampton County on counts I and VII was thus proper, and I will affirm the bankruptcy court's judgment.

### 2. Conversion (Count II)

Olick next asserts, in count II of his complaint, a claim for the common-law tort of conversion. He claims that Northampton County has not applied the tax payments it received from Bank of America, or from the bankruptcy trustee in accordance with his confirmed plan, to his unpaid tax balance.

"[C]onversion is the deprivation of another's right of property in, or use or possession of,

11

a chattel, or other interference therewith, without the owner's consent and without lawful

justification." *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964). Under

Pennsylvania law, "[m]oney may be the subject of conversion," *Pittsburgh Constr. Co. v.

Griffith*, 834 A.2d 572, 581 (Pa. Super. Ct. 2003), but "only where the plaintiff had a property

interest in the money at the time of the alleged conversion," *Kia v. Imaging Scis. Int'l, Inc.*, 735

F. Supp. 2d 256, 270 (E.D. Pa. 2010).

Here, Olick asserts that Palmer Township and the Easton Area School District have

denied receiving payment of the taxes that Northampton County collected on their behalf and

thus contends that Northampton County has converted those funds for some other purpose.

As a preliminary matter, to the extent that Olick claims that Northampton County has

converted funds received from Bank of America, his claim must fail as a matter of law. Olick had

no interest in the funds paid by Bank of America and there is thus no basis for his conversion

claim. *See Phila. Factors, Inc. v. Working Data Grp., Inc.*, 849 A.2d 1261, 1263 (Pa. Super. Ct.

2004) (holding that where plaintiff had previously sold its accounts receivable to a third party

and thus had no interest in such funds, plaintiff could not state a claim for conversion against

bank that mistakenly received payment from debtor and kept funds to decrease plaintiff's

obligation at bank).

In any event, Olick has submitted no evidence to support his claim that Northampton

County converted funds received from either Bank of America or the bankruptcy trustee. As the

bankruptcy court noted, Northampton County marked as satisfied its claim for unpaid taxes,

including those taxes it was collecting on behalf of Palmer Township and the Easton Area School

District, thereby relieving the bankruptcy trustee of any obligation to make further payments on

12

that claim. And there is no evidence that either Palmer Township or the Easton Area School District has attempted to collect from Olick or has otherwise asserted a claim against him for the funds allegedly withheld by Northampton County. In short, Olick has failed to offer any evidence from which a fact-finder could reasonably find that Northampton County converted the funds it received.

Olick also contends that because the taxes that Northampton County identified as unpaid in response to BAC's inquiry exceeded the allowed portion of Northampton's claim, Northampton County must have converted the payment it had previously received from the bankruptcy trustee by either applying that payment to disallowed claims or otherwise using the payment for some improper purpose. At the time of BAC's inquiry, Northampton County had already received a payment of $269.26 from the bankruptcy trustee, and as a result, the remaining amount due on Northampton County's claim no. 7 was $1,284.56. In response to BAC's inquiry, Northampton County prepared a certification stating that the total tax balance then due on the specified property was $12,978.81. There is no dispute that this amount reflected post-petition taxes owed as well as pre-petition taxes. Olick contends, however, that the pre-petition taxes included in this total exceeded the remaining amount due on claim no. 7. Northampton County concedes that the tax balance reported to BAC included "pre-petition obligations that were not part of the approved claims." (Northampton County's Br. at 4 n.3.) But once again, Olick has produced no evidence from which a fact-finder could reasonably find that Northampton converted any funds received from the bankruptcy trustee. There is no evidence that Northampton County failed to apply the $269.26 payment from the bankruptcy trustee to reduce the unpaid balance of claim no. 7 to $1,284.56. Indeed, Cindy Hoffer, the tax claim supervisor

13

for Northampton County, stated in an affidavit that the balance reported to BAC "included the sum of $1,284.56, which was the unpaid balance of the allowed Claim No. 7." (Northampton's Br. Ex. 1, Aff. of Cindy Hoffer (July 14, 2010) ¶ 5.) And Olick has offered no evidence to dispute her statement. In any event, even assuming that Northampton County misapplied the trustee's payment, Olick has failed to offer any evidence—beyond his conclusory allegations—from which a fact-finder could reasonably find that Northampton County converted the bankruptcy trustee's payment.

Accordingly, I will affirm the bankruptcy court's grant of summary judgment in favor of Northampton County as to this claim.[10]

### 3.    Violation of the Automatic Stay (Count III)

Olick next asserts a claim for violation of the automatic stay under section 362 of the Bankruptcy Code.

Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as an automatic stay that protects the debtor and property of the bankruptcy estate. *See* 11 U.S.C. § 362(a). As relevant in this case, section 362 automatically stays

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> . . . [and]

---

[10] Olick also claims that Northampton County converted tax payments that he made before he filed his bankruptcy petition. He contends that the bankruptcy court's disposition of claims no. 7 and no. 8 is evidence that Northampton County did not credit pre-petition amounts paid against his outstanding tax balance. Although this allegation formed the basis for his fraud claim in his amended adversary complaint, it does not appear that he asserted this conversion claim in the bankruptcy court. In any event, this claim must fail because, beyond his conclusory allegations, Olick has presented no evidence from which a fact-finder could reasonably conclude that Northampton County converted Olick's pre-petition tax payments.

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a).

Olick claims that Northampton County violated the automatic stay by seeking payment from Bank of America for pre-petition taxes. There is no merit to this claim. As the bankruptcy court reasoned, Northampton County's conduct is analogous to that of a creditor that sells its claim against the debtor to a third party. And it is well established that such transfers do not violate the automatic stay. *See, e.g.*, *In re Garcia*, No. 10-23707, 2011 WL 2551184 (Bankr. D.N.J. June 24, 2011); *In re Layton*, 220 B.R. 508, 515 (Bankr. N.D.N.Y. 1998); *Citicorp Park Assocs. v. Aetna Life Ins. Co.* (*In re Citicorp Park Assocs.*), 173 B.R. 823, 824 (Bankr. D. Me. 1994). As one court has explained, "the automatic stay provisions of the Bankruptcy Code do not prohibit a creditor of a debtor from transferring any interest or claim it might have against the debtor's bankruptcy estate to a third party." *Tidwell v. Slocumb* (*In re Georgia Steel, Inc.*), 71 B.R. 903, 909 (Bankr. M.D. Ga. 1987). Rather, "[s]uch a transfer merely substitutes the party that holds the interest or claim against the debtor's bankruptcy estate, and such transfer does not serve to increase or decrease the interest or claim the party asserts against the debtor's bankruptcy estate." *Id.* Although Bank of America simply paid the tax claim rather than purchasing it from Northampton County, the same reasoning applies here.[11] And because there is no evidence that Olick had any property interest in the funds used by Bank of America to pay the tax claim, I

---

[11] In addition, merely *accepting* the payment of taxes from Bank of America cannot constitute an "act to collect, assess, or recover a claim" against Olick by Northampton County, and the bankruptcy court did not err in concluding that there was no evidence to support a finding that Northampton County took any affirmative action to obtain the payment it received.

15

conclude that Northampton County did not violate the automatic stay.[12] Accordingly, I will

affirm the bankruptcy court's judgment in favor of Northampton County as to this claim.

### 4.      Breach of Contract (Count V)

Olick similarly claims that Northampton County breached the settlement agreement from

a prior adversary proceeding brought by Olick against Northampton County and other defendants

by seeking payment from Bank of America for pre-petition taxes.

The bankruptcy court reasoned that Northampton County's essential obligation under the

settlement agreement was to comply with the automatic stay. The settlement agreement provides,

in relevant part:

> a.   Northampton County, the Northampton County Tax Claim Bureau, the City of
>       Easton and the Easton Area School District will not take any action of any nature
>       to collect claims for taxes that were due as of the date of filing of the Chapter 13
>       Bankruptcy Petition and acknowledge that to the extent that those claims are
>       allowed, they will be fully satisfied upon receipt of the amounts allowed by the
>       Bankruptcy Court from the Trustee in Bankruptcy.
>
> b.   Should the [*sic*] Northampton County, the Northampton County Tax Claim

---

[12] Olick also suggests that Northampton County violated the automatic stay by continuing to publicly report as unpaid certain taxes that were disallowed by the bankruptcy court. It does not appear that Olick properly presented this issue to the bankruptcy court, and the bankruptcy court did not address it. In any event, Olick has presented no evidence that Northampton County has attempted to collect such amounts. In support of his claim, Olick has submitted two real-estate tax certifications prepared by Northampton County on May 6, 2010, for 1209-15 Chidsey Street and 1220-22 Chidsey Street, which show unpaid tax balances. (*See* Appellant's Ex. K (exhibit attached to brief).) In his briefs to the bankruptcy court, Olick characterized these exhibits as "public records" (*see, e.g.*, *id.* at 6; Ex. R at 6), but he did not specify how he obtained them or for what purpose they were prepared. Nowhere has he alleged that Northampton County sent invoices to him or that Northampton County has otherwise attempted to collect these taxes. *See, e.g.*, *Zotow v. Johnson* (*In re Zotow*), 432 B.R. 252, 258–60 (B.A.P. 9th Cir. 2010). Contrary to Olick's suggestion, there is simply no evidence from which a fact-finder could reasonably find that Northampton County has attempted to "coerce" him into paying these taxes. (Appellant's Reply Br. to the Answer Brief of the EASD at 20.)

> Bureau, the City of Easton or the Easton Area School District take any steps to collect the prepetition claim for taxes, through inadvertence or otherwise, this Stipulation of Settlement shall be deemed a full defense to any such claim or actions and may be presented to specified public agency or authority as proof that all prepetition claims for taxes that are allowed will be satisfied through the bankruptcy process and no other.

(Stipulation of Settlement ¶ 19.) Section 362 similarly provides that a bankruptcy petition operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). And just as the bankruptcy court concluded that Northampton County did not violate the automatic stay, the court similarly concluded Northampton County did not breach the settlement agreement.

Olick contends, however, that the settlement agreement must be read as prohibiting Northampton County from receiving payment from a third party such as Bank of America, even if such conduct would not violate the automatic stay. I disagree.

As previously discussed, Northampton County's acceptance of payment from Bank of America on the tax claim may be analogized to the sale of the claim to Bank of America. The settlement agreement does not expressly prohibit Northampton County from transferring its claim to a third party. And while the parties intended the settlement agreement to limit Northampton County's ability to collect pre-petition taxes owed by Olick, there is no reasonable basis for concluding that Northampton County intended the settlement agreement to limit its right to transfer its claim for such taxes to a third party. Moreover, it is unreasonable to interpret the settlement agreement as permitting assignment of the claim to a third party but prohibiting payment of the claim by a third party when, in light of the purpose of the settlement agreement, there is no meaningful difference between the two transactions. I thus conclude, as a matter of

17

law, that the settlement agreement does not prohibit Northampton County from receiving payment from Bank of America for pre-petition taxes.[13, 14] Because Northampton County did not breach the settlement agreement, the bankruptcy court properly granted summary judgment in favor of Northampton County on Olick's breach-of-contract claim, and I will affirm the bankruptcy court's judgment.

## 5.    Harassment (Count IV)

Olick next asserts a claim for harassment. But, as the bankruptcy court asserted, harassment is not a recognized civil cause of action under Pennsylvania law, *see DeAngelo v. Fortney*, 515 A.2d 594, 596 (Pa. Super. Ct. 1986) (declining to create a new cause of action for harassment), and Olick's harassment claim must therefore fail.

Olick contends that 18 Pa. Cons. Stat. Ann. § 2709 provides a statutory cause of action for harassment. Section 2709, however, sets forth the elements of the *crime* of harassment; the statute does not establish a *civil* cause of action.

---

[13] "Where the meaning of a written contract is clear and unambiguous, its interpretation and construction are for the court, not the [fact-finder]." *Hewes v. McWilliams*, 194 A.2d 339, 342 (Pa. 1963). But "where the language chosen by the parties is ambiguous, deciding the intent of the parties becomes a question of fact for [the fact-finder]." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (citing *Cmty. Coll. of Beaver Cnty. v. Cmty. Coll. of Beaver Cnty., Soc'y of the Faculty*, 375 A.2d 1267, 1275 (Pa. 1977)). Thus, as a preliminary matter, a court must determine, as a matter of law, whether the terms of a contract are clear or ambiguous. *See id.* "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986).

[14] Moreover, the bankruptcy court did not err in concluding that there was no evidence to support a finding that Northampton County took "any action of any nature to collect claims for taxes" in violation of the settlement agreement by merely accepting payment from Bank of America.

In addition, in his reply briefs submitted to this court, Olick attempts, for the first time, to characterize his harassment claim as a claim for malicious prosecution, or wrongful use of civil proceedings, see 42 Pa. Cons. Stat. Ann. § 8351, and as a claim for abuse of process. A plaintiff, however, may not assert new claims for the first time on appeal, *see, e.g.*, *In re Reliant Energy Channelview LP*, 594 F.3d 200, 209 (3d Cir. 2010), and accordingly, I will not address the merits of these new claims.

Instead, because Pennsylvania law does not recognize a civil cause of action for harassment, I will affirm the bankruptcy court's grant of summary judgment in favor of Northampton County as to this claim.

### 6.    RICO (Count VI)

Finally, Olick asserts a RICO claim against Northampton County. I will affirm the bankruptcy court's grant of summary judgment in favor of Northampton County on this count because a RICO claim cannot be sustained against a municipality. *See Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3d Cir. 1991) (holding that because RICO's mandatory award of treble damages is punitive in nature, municipalities are immune from suit under RICO).

### B.    The Easton Area School District

Olick bases his claims against the Easton Area School District on an agency theory of liability, asserting that Northampton County acted as an agent of the Easton Area School District for the collection of taxes owed to the school district, and his claims against the Easton Area School District are therefore derivative of his claims against Northampton County. Accordingly, because his claims against Northampton County fail, his claims against the Easton Area School

District must similarly fail. I will therefore affirm the bankruptcy court's grant of summary judgment in favor of the Easton Area School District as to all claims against it.

**IV.     CONCLUSION**

  For the reasons set forth above, I will affirm the bankruptcy court's grant of summary judgment in favor of Northampton County and the Easton Area School District. An appropriate order accompanies this memorandum.